## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT V. CANZANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:08cv515 |
| | ) | **Electronic Filing** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

September 30, 2009

## I.   INTRODUCTION

Plaintiff, Robert V. Canzano ("Canzano" or "plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the final determination of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 401-433.

## II.   PROCEDURAL HISTORY

Canzano filed an application for DIB benefits on July 27, 2006, alleging disability since May 25, 2006, due to total right knee replacement and high blood pressure. (R. 116, 120). Canzano's claim was initially denied.[1] (R. 81-85).  A hearing was held on May 30, 2007, in Johnstown, Pennsylvania, before Administrative Law Judge Douglas W. Abruzzo ("ALJ"). (R. 38-76).  Canzano was represented by counsel, Barbara J. Artuso, Esquire, and appeared and testified. *Id.*  An impartial vocational expert ("VE"), was also present and gave testimony. *Id.* The ALJ issued an unfavorable decision on June 27, 2007, finding that Canzano was "not

---

[1]This case was randomly selected by the Commissioner to test modifications to the disability determination process, so the reconsideration step of the administrative review process was eliminated and the case was escalated to the hearing level (R.82-83); *see* 20 C.F.R. § 404.906(a) (2008).

disabled" within the meaning of the Social Security Act.[2] (R. 9-16).  The ALJ's decision became the Commissioner's final decision when, on February 15, 2008, the Appeals Council denied Canzano's request for review. (R. 2-4).  Administrative remedies thus being exhausted, plaintiff brings the instant matter before this court, seeking judicial review of the Commissioner's decision.  The parties have filed cross motions for summary judgment together with supporting briefs under Rule 56 of the Federal Rules of Civil Procedure, and the record has been developed at the administrative level.  The matter is now poised for disposition.

### III.   STATEMENT OF THE CASE

Canzano was born on September 19, 1954, making him fifty-one (51) years old at the onset of the alleged disability and fifty-two (52) years old on the date of the administrative hearing. (R. 107; 120; 43).  Under the Commissioner's regulations, applicants age 50-54 are considered persons "closely approaching advanced age" and their age is considered together with severe impairments in determining the applicant's ability to adjust to other work. 20 C.F.R. § 416.963.

Canzano graduated from high school, and earned a certificate in heating, ventilation, and air conditioning ("HVAC"). (R. 44; 125-26).  Canzano's employment history consists of work as a concrete form setter from 1996 until the onset of his disability in 2006, HVAC technician from 1995 until 1996, and machine operator from 1989 until 1994. (R. 128).

Canzano suffered from severe arthritis in his right knee, and endured total knee replacement surgery on June 15, 2005, to alleviate the pain. (R. 51; 165).  Following the surgery, Canzano attended six physical therapy sessions between June 16 and June 18, 2005, reportedly making progress towards his expected goals. (R. 171).

---

[2]An individual is considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A)(using almost identical language).

Bernard Scherer, M.D. ("Dr. Scherer"), Canzano's primary care physician, treated Canzano on June 23 and July 15, 2005, and noted that his right knee was healing well. (R. 236-37). Canzano's orthopaedic surgeon, A. Roger Wigle, M.D. ("Dr. Wigle"), likewise noted Canzano's overall post-surgery condition as fairly well on July 19, 2005. (R. 212).

Canzano completed 19 of 30 scheduled physical therapy appointments between July 15, 2005, and September 23, 2005. (R. 196-97). During these visits Canzano reported minimal pain. (R. 196; 201; 203). The physical therapist's assessment indicated that Canzano's progress was slow, which was partially due to his poor compliance with attending his scheduled sessions. (R. 196).

Although Canzano's attendance at physical therapy was less than ideal, Dr. Wigle did note improvement in Canzano's right knee during the course of his physical therapy. (R. 212). Around the same time, Dr. Scherer also observed that Canzano's right knee was healing well and improving. (R. 233-36).

In December 2005, Canzano returned to work as a concrete form setter. (R. 52-53). By April 2006, Dr. Scherer reported Canzano was experiencing some knee swelling and pain, and had a recent minor bump of the knee. (R. 232). Radiology findings of April 5, 2006, showed the right total knee prosthesis in good position, with no fracture or other acute finding seen. (R. 248). Canzano reported that his last day on the job was May 25, 2006. (R. 120). On May 26, 2006, Dr. Scherer expressed his opinion that Canzano's job was too physically demanding for his knee, and that he should get a different job or that he may qualify for partial disability. (R. 229).

Canzano had a follow-up visit with Dr. Scherer on May 31, 2006, after which Dr. Scherer reported a moderate amount of swelling. (R. 228). Dr. Scherer also expressed doubt that Canzano could return to his former job and stated that he is only capable of "light-to-medium duty." (*Id.*).

Canzano's physical therapist reported on June 1, 2006, that his knee was doing well, but had become worse after returning to work. (R. 219). Canzano rated the pain in his knee as 3-4/10 at worst, and reported that activities routinely performed at his job aggravated his knee. (*Id.*) Canzano continued to report improvement with his knee in subsequent physical therapy visits.

3

(R. 220-21).

Canzano was seen by Dr. Wigle on June 22, 2006, at which time Dr. Wigle reported that Canzano's knee was feeling pretty good since he was taken off of work by Dr. Scherer. (R. 211). Dr. Wigle stated that there was no swelling of the knee, and Canzano demonstrated a good range of motion of the knee. (*Id.*).  Dr. Wigle indicated that Canzano performed a job as a janitor that was within his capabilities, and issued a prescription to limit him to that job or an equivalent job. (*Id.*).  Dr. Scherer concurred on June 26, 2006, stating Canzano should be limited to a "very light duty job." (R. 226).

Canzano's physical therapist reported on July 7, 2006, that Canzano's condition had improved, but was being discharged from the program due to his failure to attend scheduled appointments. (R. 216).  Attempts to contact Canzano to reschedule the appointments were unsuccessful. (*Id.*).

Dr. Scherer treated Canzano on July 11, 2006, and reported that although the right knee had moderate swelling, it had improved since the last office visit. (R. 225).  Dr. Scherer indicated that Canzano should not return to his prior employment. (*Id.*).

Canzano's physical therapist reported on January 29, 2007, after Canzano had completed an additional 12 sessions of physical therapy, that Canzano had met his goal of improving knee range of motion and strength to near normal limits, although Canzano stated that his pain remains constant and rated it as a 5 out of 10 at its worst. (R. 267).  He described the pain as a burning sensation and mentioned difficulty with stairs, as well as kneeling and squatting. (*Id.*).  Manual muscle testing indicated increased strength for both flexion and extension, and a straight leg raise lag was no longer present. (*Id.*).

A physical residual functional capacity assessment was completed by a state agency consultative examiner on September 25, 2006, in which she found that Canzano could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (R. 154).  She further found that Canzano was capable of standing 6 hours in an 8 hour workday, sitting 6 hours in an 8 hour workday, and was able to push and pull to the same extent as his lifting and carrying abilities. (*Id.*).  Additional findings indicated that Canzano could occasionally climb ramps and

4

stairs, but never climb ladders, ropes, or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. (R. 155). No manipulative, visual, communicative, or environmental limitations were found. (R. 155-56). The consultative examiner found Canzano;s subjective statements regarding his limitations to be partially credible based upon the evidence contained in the file. (R. 158). The consultative examiner considered the medical source opinion of treating source Dr. Scherer and found it to be consistent with the physical residual functional capacity assessment. (*Id.*). The consultative examiner considered the medical source opinion of treating source Dr. Wigle and determined that Dr. Wigle's opinion that Canzano was capable of performing other past relevant work was not supported by substantial evidence and was inconsistent with the physical residual functional capacity assessment. (R. 158-59).

The state Bureau of Disability Determination requested a medical assessment of ability to do work-related activities (physical) from Dr. Scherer on December 11, 2006. (R. 255-61). Dr. Scherer did not complete any of the assessments on the form, but merely attached a sheet to the form noting ongoing swelling of the right knee, but no fluid pocket, some mild AP and lateral laxity, and no calf tenderness. (R. 261).

Canzano's medications include Benicar for high blood pressure and Motrin for right knee pain. (R. 125).

Canzano lives in a 2-story home with a dog and a cat, to whom he provides care. (R. 138). His condition has not required that he depend on someone else for care. (*Id.*). He is able to care for his personal needs, drives locally three or four times per week, pays his bills, does some limited yard work, takes out the trash by dragging it down the stairs of his front porch, eats out and also does some cooking, vacuums but experiences pain while doing so, and does some light grocery shopping. (R. 139). He has to hire someone to do house repairs. (*Id.*). Canzano reports that he likes to go fishing, but does not go as often as he used to. (R. 140). He has trouble going up and down the stairs to do the laundry. (*Id.*).

At the administrative hearing Canzano testified that he used a walker for nine weeks after his knee replacement surgery. (R. 51). He used a cane for almost a year after that. (*Id.*). He testified that after the surgery he attempted to return to work from December 2005 until May

2006, but had to stop due to his impairment. (R. 52).  Canzano further stated that he began experiencing pain in his left leg as a result of compensating for his right knee. (R. 53).

Canzano further testified that after 10 or 15 minutes of housework he has to sit down, but that he could use a broom or mop to sweep a room the size of the ALJ's courtroom, but that he could not do it all at one time and would need a half hour break after doing it for 15 or 20 minutes. (R. 56-57).  He testified that he could vacuum a room the size of the ALJ's courtroom. (R. 57).

Canzano stated that when doing the laundry he goes up and down the steps one step at a time while sitting. (*Id.*).  He testified that his knee hurts all the time and after standing for twenty to thirty minutes he has to sit down for at least twenty to thirty minutes. (R. 59-60).  He said that he still uses his cane when necessary. (R. 60).

Canzano testified that he typically watches ten hours of television per day, that he reads books, magazines, and the newspaper. (R. 60-61).  He stated that he writes checks and balances his checking account, he eats out at restaurants three or four times per month, and visits with his family about once a week. (R. 61-62).  Additionally, he testified that his niece usually stops by after school every day, and that she helps him out with some chores. (R. 63-64).  He stated that his sister also helps him with some chores, and a neighbor boy mows his lawn. (R. 64).

Canzano testified that the most comfortable position for him throughout the day was sitting with his leg elevated straight out, and that his knee swells and aches when the weather is going to change. (R. 65).  He puts ice on his knee in the morning and heat on it at night daily, according to the testimony. (R. 65-66).  Canzano stated that the total amount of time he spends standing in a typical day is an hour and fifteen minutes to an hour and a half. (R. 66).  He said that he had difficulty sleeping because of the pain. (*Id.*).

At the administrative hearing, the testimony of the VE indicated that a hypothetical individual sharing plaintiff's vocational characteristics and limited to light work with no more than four hours of standing or walking in an eight hour workday, no crawling or climbing ladders, ropes, or scaffolds, and no more than occasional crouching, or sedentary work with a sit,

stand, walk option[3], no more than occasional pushing or pulling with the right leg, including the operation of pedals unless the pedal requires less than five pounds of force, and avoiding prolonged exposure to cold temperature extremes and extreme wetness or humidity, with no unprotected heights, could perform work existing in the national economy in the light category as a laundry folder, labeler and marker, and mailroom clerk other than U.S. Postal Service and in the sedentary category as a surveillance system monitor, cashier or inspector checker.[4] (R. 67-70). Upon questioning by Canzano's counsel the VE testified that the hypothetical individual would be incapable of performing the light jobs he identified if that person were limited to standing or walking only one or two hours in an eight hour workday or if the person had to be in the seated position with his leg elevated waist high. (R. 72).

The ALJ issued a decision unfavorable to Canzano on June 27, 2007. (R. 9-16). After determining that Canzano meets the insured status requirements of the Social Security Act through December 31, 2010 and has not engaged in substantial gainful activity since his alleged disability onset date, the ALJ acknowledged that Canzano has the severe impairment of right total knee replacement. (R. 11). The ALJ then found that Canzano did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (R. 12). The ALJ determined that Canzano maintained the residual functional capacity ("RFC")[5] to engage in work activity at the light level subject to certain modifications allowing for his physical

---

[3]This option would permit the hypothetical individual to take no more than five steps from the workstation, performing a stretch maneuver, returning within one minute, and performing this sequence no more than five times each hour. (R. 69).

[4]For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "The ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

[5]Residual functional capacity is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a).

limitations. (R. 12-15).  Ultimately, the ALJ concluded that a significant number of jobs existed in the national economy that Canzano could perform, considering his age, education, work experience, and RFC, and therefore Canzano was not disabled within the meaning of the Act at any time relevant to the rendering of the ALJ's decision. (R. 15-16).

## IV.    STANDARD OF REVIEW

This court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).  Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)); 42 U.S.C. § 423(d)(1).  A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  To support his ultimate findings, an ALJ must do

8

more than state factual conclusions.  He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).  The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further.  At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 CFR] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c).  At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V.   DISCUSSION

Here the ALJ determined that plaintiff was not disabled within the meaning of the Act at the fifth step because he found that plaintiff was capable of performing a range of light work existing in significant numbers in the national economy.  The light work category is described in the regulations as follows:

> (b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very little, a job is in

> this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm and leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

The ALJ further narrowed plaintiff's ability to perform light work by assessing an RFC limiting him to, *inter alia*, no more than four hours of walking or standing in an eight hour workday.  Based upon the limitations described by the ALJ, the VE was able to identify representative occupations in the light and sedentary work categories that plaintiff could perform.

Plaintiff's first challenge to the sufficiency of the ALJ's decision is that the hypothetical question posed to the VE did not accurately portray all of plaintiff's work-related functional limitations, specifically alleging that the evidence in the record does not support the finding that plaintiff could perform the limited four hours of walking or standing per eight hour workday required by the ALJ's RFC.  Defendant argues that the ALJ's RFC, including the requirement that plaintiff be able to stand or walk four hours in an eight hour workday is supported by substantial evidence.

Although plaintiff argues that the hypothetical question posed to the VE by the ALJ did not accurately represent all of plaintiff's work-related functional limitations, it is apparent that the limitations contained in the hypothetical question directly track the ALJ's RFC finding.  Plaintiff's challenge, therefore, is actually an argument that the ALJ's determination of his RFC is not supported by substantial evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

In support of his argument, plaintiff relies on his testimony describing his physical limitations, selected excerpts from physical therapy treatment notes, and the opinions of Drs. Scherer and Wigle that plaintiff was incapable of returning to his previous employment as a concrete form setter.

In his decision, the ALJ supports his RFC finding by analyzing the treatment notes of Dr.

Wigle, the reports from plaintiff's various physical therapists, the radiology notes of Georgine DeMarino, M.D., and the treatment notes of Dr. Scherer. (R. 13-14) The ALJ noted that the reports from these sources generally indicated that plaintiff's condition was improving. (*Id.*). The ALJ further considered plaintiff's activities of daily living and testimony and reasoned that this evidence was not indicative of an individual experiencing totally debilitating symptomatology.

Furthermore, none of the objective medical evidence in the record indicates that plaintiff is incapable of standing or walking for four hours per eight hour workday, and none of plaintiff's treating sources so limited him.

Pursuant to the Commissioner's regulations, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529).  The Act advises:

> [a]n individual's statement as to pain or other symptoms shall alone not be conclusive evidence of disability . . . ; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that result from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under disability.

42 U.S.C. § 423(d)(5)(A); *Green v. Schweiker*, 749 F.2d 1066 (3d Cir. 1984).  The United States Court of Appeals for the Third Circuit has set forth a four-prong standard to be used by district courts when reviewing assessments of the Commissioner on subjective pain: (1) subjective complaints of pain are to be seriously considered, even where not fully confirmed by objective medical evidence; (2) subjective pain may support a claim for disability benefits and may be disabling; (3) when such complaints are supported by medical evidence, they should be given great weight; and finally, (4) where the claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount the pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31 (3d Cir. 1985).

11

Here, the ALJ found evidence which contradicted plaintiff's subjective complaints of pain, including the reports of Dr. Wigle noting plaintiff's improvement in range of motion, physical therapy treatment notes recording plaintiff's progress towards his goals, radiology results showing plaintiff's right total knee prosthesis in good condition, Dr. Scherer's notes indicating decreased swelling of the right knee, Dr. Scherer's opinion that plaintiff could work a light duty job, and physical therapy treatment notes revealing that plaintiff reported decreased pain levels and exhibited increased mobility, strength, and range of motion. (R. 13-14).

Plaintiff's reliance on the opinions of Drs. Scherer and Wigle that plaintiff was incapable of returning to his previous employment as a concrete form setter is misplaced, because the ALJ did not conclude that plaintiff was capable of returning to that job.

Plaintiff bears the burden of showing that he lacks the RFC ascribed by the ALJ. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). This plaintiff has failed to do. Additionally, to accept plaintiff's argument would require the court to reweigh the evidence of record and substitute our analysis for that of the ALJ. The court is not so empowered in these proceedings. *See Monsour Medical Center*, 806 F.2d at 1190. Because the court finds that the ALJ's RFC determination is supported by substantial evidence and is not unreasonable, that finding will not be disturbed. Likewise, the court finds no error in the hypothetical question posed to the VE by the ALJ.

Plaintiff's second assignment of error to the ALJ's decision is wholly dependent upon a finding of error under his first argument. Specifically, plaintiff argues that because the ALJ's RFC determination was unsound and that the record evidence supports that plaintiff could only perform work at the sedentary level, if at all, then the ALJ was required under the Regulations to address whether plaintiff has transferable skills from his past-relevant work experience. Plaintiff asserts that this question must be answered by the ALJ because if plaintiff can at most perform sedentary work, the Medical Vocational Guidelines ("the Grids") would become operable and thus the ALJ is required to obtain testimony from the VE regarding transferability of plaintiff's job skills to determine whether he would "grid out" and a finding of disabled would be mandated.

12

The Grids are only applicable "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule." 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(a). When the criteria are met, "the rule directs a conclusion as to whether the individual is or is not disabled." *Id.* Further, "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." *Id.*

In the instant matter, the ALJ determined that plaintiff was capable of performing a range of light work subject to additional limitations, as has already been discussed. Because the ALJ did not find that plaintiff was capable of performing "a wide or full range of light work," the Grids do not apply to this case, nor do they inform the ALJ's decision. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.00(b).

In order for plaintiff's argument under this rubric to succeed, the court must accept in the first instance that the ALJ's RFC determination was incorrect and that plaintiff is capable of performing no more than work at the sedentary exertional capacity. Only then would the Grids operate to direct a finding of disabled. However, as explained in greater detail above, the ALJ determined that plaintiff maintained the RFC to perform work at the light exertional capacity, and that finding is supported by substantial evidence. For this reason, the court finds no error in the ALJ's decision to not elicit testimony from the VE regarding the transferability of plaintiff's job skills.

Plaintiff's final argument against the validity of the ALJ's decision is that the ALJ erred in making his credibility determination because he failed to discuss plaintiff's long work history and attempt to return to work following his total knee replacement surgery in reaching his conclusion. Plaintiff argues that this omission makes it impossible for this court to determine whether this significant evidence was considered or ignored, thereby necessitating remand. The court cannot accede.

In his decision, the ALJ states that he evaluated plaintiff's subjective complaints in accordance with, *inter alia*, Social Security Regulation 404.1529. That Regulation states "[w]e

13

will consider all of the evidence presented, including information about your prior work record .

. .” 20 C.F.R. § 404.1529(c)(3).  The ALJ also invoked Social Security Regulation 416.929

which uses identical language.  The ALJ also stated that the evaluation was done in accordance

with Social Security Ruling 96-7p, which states:

> Assessment of the credibility of an individual's statements about pain
> or other symptoms and about the effect the symptoms have on his or
> her ability to function must be based on a consideration of all of the
> evidence in the case record. This includes, but is not limited to:
>
>> The medical signs and laboratory findings;
>>
>> Diagnosis, prognosis, and other medical opinions provided by
>> treating or examining physicians or psychologists and other
>> medical sources; and
>>
>> Statements and reports from the individual and from treating or
>> examining physicians or psychologists and other persons about
>> the individual's medical history, treatment and response, prior
>> work record and efforts to work, daily activities, and other
>> information concerning the individual's symptoms and how the
>> symptoms affect the individual's ability to work.

SSR 96-7p.

Additionally, in this case, this very issue was peculiarly before the ALJ.  Plaintiff's

counsel's closing remarks succinctly addressed plaintiff's argument here:

> Judge, I think that the issue in this case is whether Mr. Canzano can do
> work at the light level.  Clearly if he is limited to sedentary work he
> would grid out because of his age.  Clearly I think the evidence
> supports a finding that he could not do medium or heavy work.  So,
> light becomes the issue . . . and I think that whether or not he can do
> light depends on your assessment of his credibility. . . .
>
> With respect to his credibility, Judge, I'd just like to point out a few
> basis [sic] under ruling 96.7P [sic] for enhanced credibility in this case.
> One of course is the objective basis for his complaints of pain; a total
> knee replacement and difficulties after that with respect to the fluid
> buildup and the pain.  His treatment history; he has been through three
> courses of physical therapy in an effort to alleviate that pain, and of
> course nothing else has been recommended to him but when the
> therapy is recommended he goes.  His work history and work ethic;
> this is a man who has a long and arduous work history and attempted
> to return to work at that level following his surgery.  I don't think that
> his incentive to maintain employment can be questioned and I think all
> of those things support the credibility of his complaints.

(R. 74-75).

Furthermore, there are a number of non-medical factors that may be considered when

14

determining a plaintiff's credibility, including statements by plaintiff, daily activities, and efforts to work. 20 C.F.R. § 404.1529.  The ALJ thoroughly considered the medical record, as was discussed above, along with other sources of evidence.  Plaintiff's work history is not dispositive of the question of plaintiff's credibility.  It is only one of many factors that may be considered, and as evidenced by the ALJ's decision, was considered.

Moreover, the ALJ has authority to make credibility determinations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983).  "Because he had the opportunity observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90. (4th Cir. 1984). The ALJ's credibility determinations need only be supported by substantial evidence on the record.  Such determinations are entitled to deference. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003).  Federal law limits the scope of a district court's ability to review a federal agency's administrative decisions.  The factfinder's credibility determination is "virtually unreviewable." *Hambsch v. U.S. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1990).  The court concludes that the ALJ's credibility determination with respect to plaintiff is supported by substantial evidence and not unreasonable.

**VI.   CONCLUSION**

For all of the foregoing, the decision of the ALJ is affirmed, and the Commissioner's motion is granted.  Plaintiff's motion is denied.  An appropriate order shall issue.


<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc:   Karl E. Osterhout, Esquire
1789 S. Braddock Ave., Suite 570
Pittsburgh, PA 15218

Lee Karl
Assistant United States Attorney

15